Mark H Hutchings, Esq.
Nevada Bar No. 12783
**HUTCHINGS LAW GROUP, LLC**
400 S. 4th St., Suite 550
Las Vegas, Nevada 89101
Telephone: (702) 660-7700
Facsimile: (702) 552-5202
MHutchings@HutchingsLawGroup.com
*Attorney for Michael D. Reiner, M.D., A Professional Corporation*

**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

| | |
|---|---|
| MICHAEL D. REINER, M.D., A PROFESSIONAL CORPORATION, a Nevada professional corporation<br><br>Plaintiff,<br><br>v.<br><br>CVS PHARMACY, INC., a Rhode Island Corporation; WALMART INC., a Delaware Corporation; SMITH'S FOOD & DRUG CENTERS, INC., a Delaware Corporation; DOES I through X, inclusive; ROE BUSINESS ENTITIES I through X, inclusive,<br><br>Defendants. | Case No.<br><br>**PLAINTIFF'S COMPLAINT FOR:**<br>**1. Declaratory Relief;**<br>**2. Injunction/Specific Performance;**<br>**3. Interference with Contract;**<br>**4. Interference with Prospective Economic Advantage; and**<br>**5. Negligence/Negligence *per se*.** |

Plaintiff MICHAEL D. REINER, M.D., A PROFESSIONAL CORPORATION, ("Plaintiff") by and through counsel, Hutchings Law Group, LLC, hereby files this Complaint against CVS PHARMACY, INC., WALMART INC., SMITH'S FOOD & DRUG CENTERS, INC., DOES I through X, inclusive, and ROE Business Entities I through X, inclusive (collectively "Defendants"). Plaintiff is informed and believes, and based thereon alleges, as follows:

**I.    PARTIES**

1.    Plaintiff, MICHAEL D. REINER, M.D. A PROFESSIONAL CORPORATION ("MDPC" or "Plaintiff") is a Nevada professional corporation duly organized under the laws of the State of Nevada and doing business in the County of Nye, State of Nevada. Michael D. Reiner, M.D. ("Dr. Reiner") is a physician in good standing with the Nevada State Board of Medical Examiners, actively licensed to practice medicine in the State of Nevada, license number

1 10499. Dr. Reiner is employed as a practicing physician by MDPC. Dr. Reiner holds an active, valid Nevada Controlled Substance Registration, Certification of Registration Number CS05242.

2. Defendant CVS PHARMACY, INC. ("CVS") is a Rhode Island corporation duly organized under the laws of that State and doing business in the County of Nye, State of Nevada. CVS is one of the few pharmacies available in Nye County, Nevada to fill the prescriptions of MDPC patients.

3. Defendant WALMART INC. ("Walmart") is a Delaware corporation duly organized under the laws of the State of Delaware and doing business in the County of Nye, State of Nevada. Walmart is one of the few pharmacies available in Nye County, Nevada to fill the prescriptions of MDPC patients.

4. Defendant SMITH'S FOOD & DRUG CENTERS, INC. ("Smith's") is a Delaware corporation duly organized under the laws of that State and doing business in the County of Nye, State of Nevada. Smith's is one of the few pharmacies available in Nye County, Nevada to fill the prescriptions of MDPC patients.

5. Plaintiff does not know the true names, capacities, or bases of liability of defendants sued as DOES I through X, inclusive, and ROE BUSINESS ENTITIES I through X, inclusive. These unknown defendants, and each of them, claim some right, title, estate, lien or interest in the Property adverse to Plaintiff's interest; and their claims, and each such claim, constitute a cloud on Plaintiff's title to the Property. Plaintiff will amend this Complaint to reflect the true names of said unknown defendants when the same have been ascertained.

6. Whenever it is alleged in this Complaint that a party did any act or thing, it is meant that such party's officers, agents, employees, or representatives did such act or thing and at the time such act or thing was done, it was done with full authorization or ratification of such party or was done in the normal and routine course and scope of business, or with the actual, apparent and/or implied authority of such party's officers, agents, servants, employees, or representatives. Specifically, parties are liable for the actions of their officers, agents, servants, employees, and representatives.

/ / /

7. Each Defendant acted in all respects pertinent to this action as the agent of the other Defendants, carried out a joint scheme, business plan or policy in all respects pertinent hereto, and the acts of each Defendant are legally attributable to the other Defendants as each Defendant has ratified, approved, and authorized the acts of each of the remaining Defendants with full knowledge of said acts, making each of the Defendants an agent of the other and making each of the Defendants jointly responsible and liable for the acts and omissions of each other as alleged herein.

## II.  JURISDICTION & VENUE

8. Jurisdiction exists pursuant to U.S. Const., Article III, Section 2, which states that federal district courts can hear "all cases, in law and equity, arising under [the Constitution of the United States and] the laws of the United States."

9. 28 USC 1331 gives basis for jurisdiction because the question set forth in this Complaint is for the declaration of the rights of the parties with respect to that regulation set forth at 21 CFR 1306.04.

10. 28 USC 1332 gives this Court jurisdiction because the citizen of one state is suing the citizen of another state and the amount at stake is in excess of $75,000.

11. 28 USC 1367 gives this Court pendent jurisdiction over state law claims that are so related to claims in the action that the form a part of the same case or controversy.

12. Venue is appropriate in this Court under 28 USC 1391(b)(2) because the events giving rise to this action occurred in Nye County, Nevada.

## III.  LEGAL FRAMEWORK

13. 21 USCS 829(a)-(c) generally makes it illegal for any person other than a medical practitioner or pharmacist to dispense a Schedule II-V controlled substance.

14. 21 CFR 1306.04(a) regulates whether a prescription is effective by requiring a determination about whether the prescription was issued for a legitimate medical purpose by an individual practitioner acting in the course and scope of their practice. To be effective, a prescription must be issued for a legitimate medical purpose by a practitioner acting in the usual course of their professional practice. *McKay v. DEA*, 664 F.3d 808, 816 (10th Cir. 2011).

15. 21 CFR 1306.04(a) expressly states that the responsibility for proper prescribing and dispensing of controlled substances is upon the prescribing practitioner.

16. In Nevada, as in other states, it is illegal for a person without a medical license to practice medicine. NRS 630.400. In Nevada, pursuant to NRS 630.020, the practice of medicine means:

    a. To diagnose, treat, correct, prevent or prescribe for any human disease, ailment, injury, infirmity, deformity or other condition, physical or mental, by any means or instrumentality, including, but not limited to, the performance of an autopsy.

    b. To apply principles or techniques of medical science in the diagnosis or the prevention of any such conditions.

    c. To perform any of the acts described in subsections [a] and [b] by using equipment that transfers information concerning the medical condition of the patient electronically, telephonically or by fiber optics, including, without limitation, through telehealth, from within or outside this State or the United States.

    d. To offer, undertake, attempt to do or hold oneself out as able to do any of the acts described in subsections [a] and [b].

17. A pharmacist has a corresponding responsibility to not fill a prescription where the prescription is issued, not in the usual course of professional treatment, or is otherwise not legitimate, and to adhere to the usual course of professional pharmacy practice. 21 CFR 1306.06.

18. Where a pharmacist is charged with illegal distribution of controlled substances, critical to a determination of the matter is whether the pharmacist knew the individual prescription was not issued for legitimate medical purpose or in usual course of medical practice. *United States v. Lawson*, 682 F.2d 480, 1982 U.S. App. LEXIS 18007 (4th Cir.), cert. denied, 459 U.S. 991, 103 S. Ct. 348, 74 L. Ed. 2d 387, 1982 U.S. LEXIS 4263 (1982).

19. 21 CFR 1306 sets forth three rules pharmacies must follow when dispensing controlled substances which include:

a. A determination that the prescription was issued by a medical practitioner adhering to the usual course of their professional practice;

b. A determination that the prescription is for a legitimate medical purpose; and,

c. That in filling the prescription, the pharmacist has adhered to the usual course of professional pharmacy practice.

20. NRS 639.210 provides a number of grounds upon which the Nevada Pharmacy Board may initiate disciplinary action against a pharmacist. NRS 639.210(12) provides a basis for discipline where a pharmacist or facility violates any law or regulation relating to the practice of pharmacy.

21. Under NAC 639.753(1), a pharmacist may only decline to fill a prescription if the pharmacist reasonably believes that:

a. Filling the prescription would be unlawful;

b. Filling the prescription would be imminently harmful to the medical health of the patient;

c. The prescription is fraudulent; or

d. The prescription is not for a legitimate medical purpose.

22. Pursuant to NAC 639.753(2), if a pharmacist declines to fill a prescription, the pharmacist must speak with the practitioner in a timely manner to discuss and resolve the concerns of the pharmacist regarding the prescription.

23. Pursuant to NAC 639.753(3), after speaking with the prescribing practitioner, the pharmacist may fill the prescription if the pharmacist reasonably believes, in their professional judgment, that the prescription is:

a. Lawful;

b. Not imminently harmful to the medical health of the patient;

c. Not fraudulent; and

d. For a legitimate medical purpose.

///

24. Pursuant to NAC 639.753(4), if the pharmacist is unable to satisfy these criteria, they must retain the prescription and not return it to the patient.

25. Pharmacists are prohibited from issuing blanket refusals to fill physician issued prescriptions for a number of reasons. 21 CFR 1306 and NAC 639.753 both require a pharmacist to make an individualized inquiry as to each prescription filled, and whether that prescription is issued for a legitimate medical purpose by an individual practitioner acting in the course and scope of their practice. Further, NRS 630.400(1)(d) makes it a felony for a person to practice medicine without a license. Moreover, SB459 (2015), codified at NRS 639.23507 gives physicians not pharmacists the authority and responsibility to obtain a copy of the patient utilization report prior to issuing a controlled substance Schedule II-IV.

26. Pharmacists are not licensed to practice medicine and are strictly prohibited from "[diagnosis, treatment, correction, prevention or prescription] for any human disease, ailment, injury, infirmity, deformity or other condition, physical or mental, by any means." NRS 630.020(1).

27. NAC 639.945 enumerates the acts of unprofessional conduct for which a pharmacist or facility can be disciplined. NAC 639.945(1)(d) makes it a violation of the rules of professional conduct for a pharmacist to fail to strictly follow the instructions of the person writing a prescription, unless otherwise allowed by law. NAC 639.945(1)(e) states that it is a violation of the rules of professional conduct to fail to confer with the person writing a prescription if there is an error or omission that should be questioned. NAC 639.945(1)(i) states that it is a violation of the rules of professional conduct to perform the duties of a pharmacist in an incompetent, unskillful, or negligent manner. NAC 639.945(2) states that the owner of a business or facility is responsible for the acts of personnel in their employ.

28. Critically, pharmacists are not authorized by law to substitute their judgment about patient treatment for that of treating physicians, and their ability to refuse to fill a patient prescription is limited to an individualized inquiry to determine whether a particular prescription is issued for a legitimate medical purpose by a practitioner acting in the usual course of their professional practice.

## IV. FACTUAL BACKGROUND

29. Plaintiff is a small-town family practice located in Pahrump, Nevada that primarily treats elderly patients over the age of 65, many of whom have a demonstrated history of chronic pain. Dr. Reiner has been practicing medicine for over thirty-six (36) years, and spent approximately eight (8) years as the medical director for two separate hospice care centers. He has extensive experience treating elderly patients with chronic pain conditions. Dr. Reiner has engaged different treatments for chronic pain over the years that include physical therapy, chiropractic care, various phases of electro-muscle stimulation, referral to pain management, referral for surgery, and non-narcotic medications. There are, however, a number of MDPC patients for whom all other treatments have failed and who necessarily adhere to a stable narcotic prescription regimen. These patients are regularly drug tested to ensure 1) that they are not taking the medication with other substances that could cause adverse effects, or that are illegal, and 2) to make sure they are taking their medication as prescribed and not selling it.

30. There are only four (4) major pharmacies in Pahrump, Nevada and Walmart, CVS and Smith's are the collectively the largest fillers of MDPC's patient prescriptions.

### The CVS Allegations

31. On December 5, 2019, CVS sent a letter to Dr. Reiner claiming there were problematic patterns in controlled substance prescriptions issued by MDPC. Dr. Reiner was directed to contact a CVS representative within three business days to discuss the matter, which Dr. Reiner did. Among other things, Dr. Reiner told the CVS representative that he treated a high number of elderly patients with chronic pain, for whom other treatments such as surgery or physical therapy had failed, and who had been on stable doses of maintenance pain medication for years. Dr. Reiner explained that the patients were regularly drug tested.

32. On June 24, 2020, CVS sent correspondence to Dr. Reiner again raising issues with MDPC's prescribing patterns. Dr. Reiner spoke with CVS representatives on July 7, 2020, and addressed CVS's concerns. Among other things, Dr. Reiner again told CVS representatives about his practice. Rightfully, Dr. Reiner further questioned the legitimacy of the CVS representative, who, with no training in medicine, was attempting to practice it without a license.

33. On October 21, 2020, CVS sent Dr. Reiner a letter stating that it had persisting concerns and therefore, effective October 29, 2020, CVS would no longer fill Dr. Reiner's controlled substances prescriptions.

34. From October 29, 2020 to the present, CVS has refused to fill narcotic prescriptions for patients that were written by Dr. Reiner.

35. When asked what standard CVS uses to determine when a medical provider must be banned from filling prescriptions at CVS pharmacies, CVS representatives stated that no such standard existed, the decision was based on a "feeling" for whether the medical provider was legitimate.

36. CVS's conduct in banning Dr. Reiner's patients from filling their prescriptions with CVS has jeopardized patient safety and care.

37. CVS's conduct has interfered with MDPC and Dr. Reiner's relationships with patients.

38. CVS's conduct is a source of interference in the free and legitimate exercise of a patient's right to choose their physician.

39. CVS and its pharmacists are holding themselves out as qualified to "diagnose . . . or prescribe for any human disease, ailment, injury, infirmity, deformity or other condition" in direct violation of NRS 630.400.

40. CVS's conduct is harmful to Dr. Reiner, MDPC, its patients, and the public.

41. CVS's officers and employees have engaged in this misconduct, seemingly blind to the fact that neither the Nevada Board of Medical Examiners, the Nevada Board of Pharmacy, the Nevada Attorney General's Office, the DEA, and the DOJ, whose role it is to regulate illegal prescriptions issued by medical providers, have an issue with MDPC or Dr. Reiner's medical practice or his prescribing practices.

### The Walmart Allegations

42. On July 13, 2020, Walmart Controlled Substance Compliance sent correspondence to Dr. Reiner stating Walmart was issuing a blanket refusal to fill Dr. Reiner's prescriptions for controlled substances Schedules II-V. The letter stated that Dr. Reiner's

"controlled substance prescribing patterns" and "other factors" were the basis for the decision.

43. Upon information and belief, Walmart's decision was initiated as an act of retaliation by a pharmacist at the Walmart pharmacy in Pahrump, Nevada, without any prior investigation, and using no standard for determining whether Dr. Reiner's narcotic prescriptions for his patients were legitimate.

44. MDPC is aware of at least six (6) MDPC patients for whom Walmart has refused to conduct individualized inquiries when refusing to fill legitimate prescriptions, because of the arbitrary and capricious edict issued on or about July 13, 2020.

45. Like CVS, it is believed that Walmart has no standard to determine when a medical provider must be banned from filling prescriptions at Walmart pharmacies, other than how Walmart representatives "feel" about the medical provider.

46. Walmart's conduct in banning Dr. Reiner's patients from filling their prescriptions with Walmart has jeopardized patient safety and care.

47. Walmart's conduct has interfered with MDPC and Dr. Reiner's relationships with patients.

48. Walmart's conduct is a source of interference in the free and legitimate exercise of a patient's right to choose their physician.

49. Walmart and its pharmacists are holding themselves out as qualified to "diagnose . . . or prescribe for any human disease, ailment, injury, infirmity, deformity or other condition" in direct violation of NRS 630.400.

50. Walmart's conduct is harmful to Dr. Reiner, MDPC, its patients, and the public.

51. Walmart's officers and employees have engaged in this misconduct, seemingly blind to the fact that neither the Nevada Board of Medical Examiners, the Nevada Board of Pharmacy, the Nevada Attorney General's Office, the DEA, and the DOJ, whose role it is to regulate illegal prescriptions issued by medical providers, have an issue with MDPC or Dr. Reiner's medical practice or his prescribing practices.

///

///

The Smith's Allegations

52. On June 10, 2021, Smith's sent a letter to Dr. Reiner via certified mail informing him that Smith's Pharmacy, its parent company and affiliates, would no longer fill controlled substances prescriptions Schedule II-V written by Dr. Reiner.

53. Smith's conducted no investigation or inquiry into the legitimacy of Dr. Reiner's prescriptions for his patients other than claiming to have conducted a general review of Dr. Reiner's "controlled substance prescribing patterns and other factors." Smith's conducted no individualized inquiry into the legitimacy of prescriptions written for particular patients.

54. Like CVS and Walmart, it is believed that Smith's has no standard to determine when a medical provider must be banned from filling prescriptions, other than how Smith's representatives "feel" about the medical provider.

55. Smith's conduct in banning Dr. Reiner's patients from filling their prescriptions has jeopardized patient safety and care.

56. Smith's conduct has interfered with MDPC and Dr. Reiner's relationships with patients.

57. Smith's conduct is a source of interference in the free and legitimate exercise of a patient's right to choose their physician.

58. Smith's and its pharmacists are holding themselves out as qualified to "diagnose . . . or prescribe for any human disease, ailment, injury, infirmity, deformity or other condition" in direct violation of NRS 630.400.

59. Smith's conduct is harmful to Dr. Reiner, MDPC, its patients, and the public.

60. Smith's officers and employees have engaged in this misconduct, seemingly blind to the fact that neither the Nevada Board of Medical Examiners, the Nevada Board of Pharmacy, the Nevada Attorney General's Office, the DEA, and the DOJ, whose role it is to regulate illegal prescriptions issued by medical providers, have an issue with MDPC or Dr. Reiner's medical practice or his prescribing practices.

61. It is believed that CVS, Walmart, and Smith's have made decisions internally to issue blanket decrees refusing to fill legitimate prescriptions of medical providers because

Defendants see it as economically inefficient to require pharmacists to conduct individualized inquiries to determine the legitimacy of patient prescriptions as required by law.

62. It is believed that CVS, Walmart, and Smith's have made decisions internally to issue blanket decrees refusing to fill legitimate prescriptions of medical providers because Defendants see it as economically inefficient to develop accurate or meaningful standards for determining whether to fill the prescriptions of certain providers.

63. It is believed that CVS, Walmart, and Smith's have made an economic decision to substitute their judgment for that of medical practitioners about the legitimacy of the use of prescription medications to treat patient illness despite their utter lack of qualification or training to do so.

64. Critically, the concerns created by the opioid epidemic, the mandates of the pharmacy industry, and the mandates of the medical industry are all balanced and addressed by simply requiring pharmacies and pharmacists to follow the law, as it now exists, to conduct individualize inquiries into individual patient prescriptions when there is a suspicion that the prescription may be illegal. This already existing legislative framework is entirely adequate to address the problem of illegal narcotic prescriptions, if pharmacies and pharmacists will only follow the rules. CVS, Walmart, and Smith's have brazenly refused to follow those rules. National retail pharmacies must not be allowed to issue blanket edicts refusing to fill narcotic prescriptions from certain medical providers, without any articulated standards, and based on how pharmacy employees are "feeling." This opens the door to arbitrary and capricious abuses of power that threaten patient health and safety, undermine the public policy addressing the balance of power between the pharmaceutical and medical industries, and undermine the efficacy and cooperation of the medical and pharmaceutical professions. Decisions about whether trained medical providers are permitted to issue narcotic prescriptions are best left to the regulatory bodies that govern the practice of medicine, such as the Nevada Board of Medical Examiners, the Nevada Board of Pharmacy, the Nevada Attorney General's Office, the Drug Enforcement Agency, and the Department of Justice, and should not be allowed to be made by ill-qualified, economically motivated risk management departments of national retail pharmacy chains.

## V. CAUSES OF ACTION

### FIRST CAUSE OF ACTION

### DECLARATORY RELIEF

### 28 USC 2201

65.     Plaintiff re-alleges the allegations of paragraphs 1 through 64 above as though fully set forth herein.

66.     28 USC 2201, the Declaratory Judgments Act, authorizes federal courts to provide remedy to claimants in the form of declaratory judgments or decrees, except in certain well-defined circumstances, none of which apply in this instance. Traditionally, declaratory relief was available to claimants who could show a justiciable controversy between adverse parties where the party seeking relief had a legally protectable interest and the claim was ripe for determination.

67.     There is a justiciable controversy because Plaintiff has a legitimate claim that Defendants do not have the legal authority to issue blanket do not fill edicts to their retail pharmacies directing them to refuse to honor patient prescriptions written by Plaintiff. The controversy between the parties is not contingent, Defendants have issued blanket do not fill edicts that have harmed Plaintiff. Plaintiff has suffered particularized harm in the form of impairment of his medical practice and damage to his reputation.

68.     The interest of the parties are adverse because Defendants have claimed the right to refuse to fill Dr. Reiner's prescriptions and Dr. Reiner has the actual authority to issue patient prescriptions which must be filled by pharmacists unless certain conditions are met.

69.     Plaintiff has a legally protectable interest because his ability to practice medicine, his ability to provide patient care, his ability to run his business, his ability to make a living, his reputation, and the rights granted to him by the Nevada Board of Medical Examiners, the Nevada Board of Pharmacy, and the United States Drug Enforcement Agency to write Schedule II-V prescription medications are all jeopardized by the unlawful activities of the Defendants.

70.     The dispute between the parties is ripe for determination because a declaration of the rights of the parties will settle the proper relationship between the named retail pharmacies and Plaintiff concerning the proper procedure retail pharmacies must follow when filling

prescriptions. The uncertain nature of this relationship has already caused harm to Plaintiff's medical practice, Plaintiff's reputation, and Plaintiff's patients, to whom he has an obligation.

71. Plaintiff seeks a declaration from the Court, pursuant to 28 USC 2201, that:

    a. Defendants are prohibited by 21 CFR 1306 et seq., NRS Chapter 630, and NAC Chapter 639 from issuing blanket do not fill edicts for prescriptions written by Plaintiff;

    b. Defendants are required under 21 CFR 1306 et seq., NRS Chapter 630, and NAC Chapter 639 to conduct an individualized inquiry into the legitimacy of each prescription written by Plaintiff before making a decision about whether or not to fill;

    c. Alternatively, that if Defendants are not prohibited from issuing blanket do not fill edicts and are not required to conduct an individualized inquiry into the legitimacy of each prescription written by Plaintiff before making a decision about whether or not to fill, that Defendants be required to articulate a rational standard about how they determine whether or not a do not fill edict should issue with respect to a medical provider.

72. Plaintiff has been forced to retain the services of an attorney due to the wrongful conduct of Defendants and therefore requests an award of reasonable attorney fees and costs of suit as provided by any applicable contract, rule, or statute.

## SECOND CAUSE OF ACTION

### INJUNCTIVE RELIEF

**(Against all Defendants)**

73. Plaintiff re-alleges the allegations of paragraphs 1 through 72 above as though fully set forth herein.

74. Pursuant to Fed. R. Civ. Proc. 65 and NRS 33.010, Plaintiff seeks Orders for preliminary injunction, permanent injunction, and specific performance against Defendants as follows:

/ / /

a. Perpetually prohibiting Defendants from issuing or enforcing blanket do not fill orders for prescriptions written by Plaintiff; and

b. Directing Defendants that they may only refuse to fill prescriptions written by Plaintiff for Schedule II-V medications where their pharmacists have complied with 21 CFR 1306 and NAC 639.753; both of which require an individualized inquiry as to each prescription filled, and whether that prescription is issued for a legitimate medical purpose by an individual practitioner acting in the course and scope of their practice.

75. Plaintiff has a likelihood of success on the merits as set forth more fully within this Complaint. Plaintiff merely requests that the Defendants be required to follow already existing law.

76. Defendant has cited its interest as being a desire to avoid prosecution by the Drug Enforcement Agency and various state attorneys general for violation of 21 CFR 1306.04. This claim is specious:

c. 21 CFR 1306.04 *specifically* puts primary "responsibility for the proper prescribing and dispensing of controlled substances. . . upon the prescribing practitioner. . ." with only a secondary responsibility placed on the pharmacist that fills the prescription. The statute places no corresponding duty placed upon Defendants, who operate national retail pharmacy chains, other than the proper supervision of pharmacists and implementations or proper pharmacy standards.

d. Where a pharmacist is charged with illegal distribution of controlled substances, critical to a determination of the matter is whether the pharmacist knew the individual prescription was not issued for legitimate medical purpose or in usual course of medical practice. *United States v. Lawson*, 682 F.2d 480, 1982 U.S. App. LEXIS 18007 (4th Cir.), cert. denied, 459 U.S. 991, 103 S. Ct. 348, 74 L. Ed. 2d 387, 1982 U.S. LEXIS 4263 (1982). This means that to be charged with illegal distribution, a

pharmacist must have conducted an individualized inquiry, must have known the individual prescription was not issued for a legitimate medical purpose, and must have made a decision to fill the prescription anyway.

    e.    21 CFR 1306 sets forth three rules pharmacists must follow when dispensing controlled substances which include:

        i.    A determination that the prescription was issued by a medical practitioner adhering to the usual course of their professional practice;

        ii.    A determination that the prescription is for a legitimate medical purpose; and,

        iii.    That in filling the prescription, the pharmacist has adhered to the usual course of professional pharmacy practice.

    f.    Under NAC 639.753(1), which controls whether the pharmacist has adhered to the usual course of professional pharmacy practice, a pharmacist may only decline to fill a prescription if the pharmacist reasonably believes that:

        i.    Filling the prescription would be unlawful;

        ii.    Filling the prescription would be imminently harmful to the medical health of the patient;

        iii.    The prescription is fraudulent; or

        iv.    The prescription is not for a legitimate medical purpose.

    g.    Pursuant to NAC 639.753(2), if a pharmacist declines to fill a prescription, the pharmacist *must* speak with the practitioner in a timely manner to discuss and resolve the concerns of the pharmacist regarding the prescription. This means that to refuse to fill a Schedule II-V prescription of a medical provider, a pharmacist *must* conduct an individualized inquiry into the legitimacy of the prescription. <u>Blanket Do Not Fill Orders are Prohibited</u>.

///

      h.      Pursuant to NAC 639.753(3), after speaking with the prescribing practitioner, the pharmacist may fill the prescription if the pharmacist reasonably believes, in their professional judgment, that the prescription is:

        i.  Lawful;

        ii.  Not imminently harmful to the medical health of the patient;

        iii.  Not fraudulent; and

        iv.  For a legitimate medical purpose.

      i.      Pursuant to NAC 639.753(4), if the pharmacist is unable to satisfy these criteria, they *must* retain the prescription and not return it to the patient. <u>The only remedy available to a pharmacist that discovers an illegal prescription is to refuse to fill it and retain the prescription</u>.

77.    The statutory and regulatory law is explicit, Defendants are categorically prohibited from issuing blanket do not fill orders with respect to Plaintiff's written prescriptions for Schedule II-V medications; especially where such orders are issued for the purpose of avoiding compliance with the usual course of professional pharmacy practice as codified by federal and state regulations.

78.    If injunctive relief and specific performance are not awarded, Plaintiff has suffered and will continue to suffer irreparable harm for which economic damages are not a sufficient remedy in the form of harm to professional reputation, harm to the ability to engage in the licensed practice of medicine, harm to prospective business relationships, harm to existing doctor/patient relationships, and harm to relationships with health insurance companies, among other things.

79.    Plaintiff stands ready to post bond as adequate security for costs and damages in the event of wrongful enjoinment.

80.    Plaintiff has been forced to retain the services of an attorney due to the wrongful conduct of Defendants and therefore requests an award of reasonable attorney fees and costs of suit as provided by any applicable contract, rule, or statute.

## THIRD CAUSE OF ACTION

## NEGLIGENT AND/OR INTENTIONAL INTERFERENCE WITH BUSINESS AND CONTRACTUAL RELATIONS

**(Against all Defendants)**

81. Plaintiff re-alleges the allegations of paragraphs 1 through 80 above as though fully set forth herein.

82. Plaintiff is a provider of medical services to the public. Plaintiff has contractual relationships with patients and insurers for the provision of medical services.

83. Defendants have knowledge of these relationships and have filled prescriptions written by Plaintiff in years past.

84. Defendants' actions, whether negligent or intentional, were designed to induce a breach or disruption of the contracts between Plaintiff and its' patients, with third-party insurers, and to disrupt the public trust and confidence. Defendants issued blanket do not fill edicts with respect to all Schedule II-V prescriptions written by Plaintiff without legal basis, and without conducting a reasonable investigation into whether Plaintiff's prescribing practices were within acceptable standards of medical care. Defendants knew or should have known this would harm Plaintiff's reputation and standing in the community, would disrupt doctor/patient relationships, and would disrupt Plaintiff's relationships with health insurance companies.

85. Defendants' actions resulted in actual breach of doctor/patient relationships, disruption of Plaintiff's relationships with health insurers, and harmed Plaintiff's reputation and standing in the community.

86. Defendants' actions actually harmed Plaintiff by destroying doctor/patient relationships, by harming Plaintiff's reputation and standing in the community, by causing past, present and future financial loss, and by harming Plaintiff's relationships with third-party health insurers.

87. Defendants' actions were intentional, oppressive, malicious, willful, and wanton and Plaintiff is entitled to punitive damages to deter future misconduct by Defendants.

///

88. Plaintiff has been forced to retain the services of an attorney due to the wrongful conduct of Defendants and therefore requests an award of reasonable attorney fees and costs of suit as provided by any applicable contract, rule, or statute.

## FOURTH CAUSE OF ACTION

## TORTIOUS INTERFERENCE WITH PROSPECTIVE ECONOMIC ADVANTAGE

### (Against all Defendants)

89. Plaintiff re-alleges the allegations of paragraphs 1 through 88 above as though fully set forth herein.

90. Plaintiff is a provider of medical services to the public. Plaintiff has an economic relationship with patients, insurers, and the surrounding community.

91. Plaintiff derives possible future economic benefit from these relationships by providing medical services in exchange for payment from patients and insurers.

92. Defendants knew of this relationship. Each Defendant had filled prescriptions written by Plaintiff many times in the years past.

93. Defendants issued blanket do not fill edicts with respect to all Schedule II-V prescriptions written by Plaintiff without legal basis, and without conducting a reasonable investigation into whether Plaintiff's prescribing practices were within acceptable standards of medical care. Defendants knew or should have known this would harm Plaintiff's reputation and standing in the community, would disrupt the doctor/patient relationship, and would disrupt Plaintiff's relationship with health insurance companies.

94. Plaintiff's relationships with patients, insurers, and the surrounding community were actually disrupted by the Defendants' misconduct.

95. Defendants' conduct was the proximate cause of harm to the Plaintiff. Plaintiff's relationships with patients were disrupted or terminated, Plaintiff's relationships with insurers were disrupted, and Plaintiff's reputation in the surrounding community was disrupted by Defendants' wrongful conduct; all of which led Plaintiff to suffer financial loss and reputational harm.

/ / /

96. Defendants' actions were intentional, oppressive, malicious, willful and wanton and Plaintiff is entitled to punitive damages to deter future misconduct by Defendants.

97. Plaintiff has been forced to retain the services of an attorney due to the wrongful conduct of Defendants and therefore requests an award of reasonable attorney fees and costs of suit as provided by any applicable contract, rule, or statute.

## FIFTH CAUSE OF ACTION

### NEGLIGENCE/NEGLIGENCE PER SE

**(Against all Defendants)**

98. Plaintiff re-alleges the allegations of paragraphs 1 through 97 above as though fully set forth herein.

99. Defendants owed a duty to Plaintiff to operate as a reasonably pharmacy would in like or similar circumstances, according to customary professional pharmacy standards, when filing prescription medications written by Plaintiff.

100. Defendants' duties are codified in state and federal regulations at 21 CFR 1306, NRS 630, and NAC 639 and elsewhere, as set forth more fully within this Complaint.

101. Plaintiff is a licensed medical service provider these statutes are designed to protect.

102. Defendants breached their duties to Plaintiff when they issued blanket do not fill orders with respect to Plaintiff's written prescriptions for Schedule II-V controlled substances, and when they failed or otherwise refused to conduct individualized inquiry into the medical legitimacy of the written prescriptions prior to refusing to fill those prescriptions.

103. Defendants' breach was the actual and proximate cause of harm to Plaintiff in the form of harm to reputation, humiliation, past, present and future economic loss, harm to prospective business interests, and other harms to be proven at trial.

104. Plaintiff has been forced to retain the services of an attorney due to the wrongful conduct of Defendants and therefore requests an award of reasonable attorney fees and costs of suit as provided by any applicable contract, rule, or statute.

/ / /

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays for relief as follows:

1. For a Declaratory Order;

2. For Injunctive Relief and Specific Performance;

3. For an award of all actual, compensatory, consequential, incidental, prospective, reputational, specific and general damages resulting from Defendants' wrongful conduct, in an amount to be established according to proof at trial;

4. For an award of punitive damages;

5. For an award of attorney fees and costs;

6. For pre and post judgment interest; and

7. For such other and further relief as the Court may deem just and proper.

Respectfully submitted,

Dated: April 29, 2022                    HUTCHINGS LAW GROUP, LLC

By: */s/ Mark H. Hutchings*
Mark H. Hutchings, Esq.
NV Bar. No. 12783
400 S. 4th St. Suite 550
Las Vegas, NV 89101
Telephone: (702) 660-7700
mhutchings@hutchingslawgroup.com
*Attorney for Michael D. Reiner, M.D., A Professional Corporation*